**HELLER & EDWARDS**
Lawrence E. Heller, Esq. - Bar No. 69770
9454 Wilshire Boulevard, Suite 500
BEVERLY HILLS CA 90212-2982
Telephone:   (310) 550-8833
Facsimile:   (310) 858-6637
lheller@hellerandedwards.com
Attorneys for Plaintiff UNIVERSAL SURFACE TECHNOLOGY, INC., d.b.a. "Trendy Embellishment"

FILED
CLERK, U.S. DISTRICT COURT

JAN 28 2011

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNIVERSAL SURFACE TECHNOLOGY, INC., a California corporation, doing business as "Trendy Embellishment," <br><br> Plaintiff, <br><br> vs. <br><br> SAE-A TRADING CO. LTD., a South Korean corporation; SAE-A TRADING AMERICA CORPORATION, a New York corporation; OCEN, INC., a California corporation; GLOVIA, Sociedad Anonima, a Guatemalan corporation; and Does 1 through 50, inclusive. <br><br> Defendants. | Case No.: CV 10-6972CAS (PJWx) <br><br> FIRST AMENDED COMPLAINT FOR : <br><br> (1) COPYRIGHT INFRINGEMENT; <br> (2) REVERSE PALMING OFF IN VIOLATION OF THE LANHAM ACT [15 U.S.C. 1125(a); <br> (3) UNFAIR COMPETITION AND FALSE ADVERTISING UNDER CALIFORNIA LAW [Cal Bus & Prof Code §17200 et se.]; <br> (4) COMMON LAW UNFAIR COMPETITION; <br> (5) FRAUD & DECEIT; AND <br> (6) MISAPPROPRIATION OF TRADE SECRET INFORMATION [Cal Civil Code §3426 et seq.] <br><br> DEMAND FOR JURY TRIAL |

Plaintiff, UNIVERSAL SURFACE TECHNOLOGY, INC., a California corporation, doing business as "Trendy Embellishment" alleges as follows:

## JURISDICTION

1.     This is an action which arises under the laws of the United States, 17 U.S.C. §101 et seq., 15 U.S.C. §1125(a), and under state law. This Court has jurisdiction of the subject matter of this action under 28 U.S.C. §§1331, 1337, 1338(a), and 15 U.S.C. §1121, because this action arises under an Act of Congress relating to Copyrights, the Copyright Act of 1976, and the Lanham Act, and the principles of pendent jurisdiction pursuant to 28 U.S.C. §1367(a).

2.     This Court has personal jurisdiction over the Defendants, and each of them, because the Defendants, and each of them, have done or do business within this judicial district and intentionally sold and/or otherwise commercially exploited the infringed copyrighted designs that are the subject of this action within the Central District of California.

## VENUE

3.     Venue is proper in this judicial district under 28 U.S.C. §§1391 and 1400(a), because the Defendants, or their agents, transact business in this district and the events giving rise to Plaintiff's claims herein.

## PARTIES

4.     Plaintiff, UNIVERSAL SURFACE TECHNOLOGY, INC. ("Plaintiff") doing business under the fictitious business name "Trendy Embellishment," is, and has at all relevant times herein has been, a corporation, formed and existing pursuant to the laws of the State of California, with its principal place of business located in this judicial district.

5.     Plaintiff is informed and believes, and on that basis alleges, that defendant SAE-A TRADING CO. LTD. ("SAE-A-Korea") is, and at all times relevant hereto was, a South Korean corporation with wholly owned subsidiaries in New York and California, who at all times relevant hereto has been importing clothing apparel from South Korea and Latin America, and selling these products throughout the United States, including in this judicial district. Plaintiff is informed and believes, and on that basis alleges, that defendant SAE-A Korea is one of the largest manufacturers and sellers of clothing apparel in the world.

6.     Plaintiff is informed and believes, and on that basis alleges, that defendant SAE-A TRADING AMERICA CORPORATION ("SAE-A-America") is, and at all times relevant herein was, a corporation organized and existing under the laws of the State of New York, with its principal place of business in the city of New York, State of New York.  Plaintiffs is further informed and believes, and on that basis alleges, that defendant SAE-A-America is qualified to do business, and is doing business, in the State of California, and is a wholly owned subsidiary of SAE-A Korea.

First Amended Complaint.wpd

7.     Plaintiff is informed and believes, and on that basis alleges, that defendant OCEN, INC. ("Ocen") is, and at all times relevant herein was, a corporation organized and existing under the laws of the State of California, with its principal place of business in the city of New York, State of New York.  Plaintiff is further informed and believes, and on that basis alleges, that defendant Ocen maintains an office in Torrance, California and is doing business in this judicial district. Plaintiff is informed and believes, and on that basis alleges, that defendant Ocen is a wholly owned subsidiary of defendant SAE-A America and its parent company, SAE-A Korea.

8.     Plaintiff is informed and believes, and on that basis alleges, that defendant GLOVIA, Sociedad Anonima, ("Glovia") is, and at all times relevant herein was, a corporation organized and existing under the laws of the Republic of Guatemala.  Plaintiff is further informed and believes, and on that basis alleges, that defendant GLOVIA is a wholly owned subsidiary of defendant SAE-A Korea.

9.     Plaintiff is informed and believes, and on that basis alleges, that the Does defendants, Does 1 through 50, inclusive, whose identity is not currently known to Plaintiff, are individuals and business entities engaged in the manufactures, importation, distribution or sale of merchandise bearing, without authorization, counterfeits, copies or imitations of Plaintiff's products and/or designs, in combination with defendants SAE-A Korea, SAE-A America and Ocen. The identity of these unnamed defendants is presently unknown and cannot be known to Plaintiff, but these entities will be added as named defendants to this action once they are identified. Unless indicated specifically, defendants SAE-A Korea, SAE-A America, Ocen and Does 1 through 50, inclusive, will be collectively referred to herein as "Defendants."

10.     Plaintiff is informed and believes, and on that basis alleges, that Defendants and each of them, either individually or in concert with the other Defendants, have manufactured, advertised, sold and/or distributed their infringing products in this judicial district.

## FACTUAL BACKGROUND

11.     Plaintiff has, for the last twelve years, been in the business of designing and creating two dimensional artwork in the form of silk prints which are applied by Plaintiff to

3

clothing apparel.  Over the course of a number of years Plaintiff has developed unique manufacturing processes known as water base printing, discharge printing and sublimation, whereby print designs can be applied to clothing through the use of these printing processes which are an alternative to screen printing, also being used by Plaintiff.

12.  Plaintiff is informed and believes, and on that basis alleges, that although water base printing had been in existence for a substantial period of time prior to Plaintiff's utilization of that process, Plaintiff was the first, and to this date, to its knowledge, is the only manufacturer capable of mass producing clothing apparel with water base prints on it.

13.  Water base printing is far superior to what is generally called "plastisol" printing (an oil based process that uses plastics and heavy binders in order to apply the prints to fabric) because, unlike "plastisol" printing, water base printing produces fabric that is soft to the touch and represents a far "greener" technology.  Accordingly, Plaintiff's unique water base printing process, or sublimation technology, is very popular and highly in demand by clothing manufacturers and retailers.

14.  Plaintiff's water base printing, discharge printing and sublimation manufacturing technology have been specifically developed by Plaintiff over a substantial period of time through trial and error testing. In order to apply those printing technologies to fabrics, it is necessary for Plaintiff to utilize very particularized components, such as specialized glues, binders, wetting agents, softeners, pigments and spot removers. Indeed, in order to mass produce its water base printing, discharge printing and sublimation processes Plaintiff had to itself formulate various of these components . Plaintiff's water base printing, discharge printing and sublimation technologies, and the specific agents used in its manufacturing processes, have been maintained in confidence and constitute a highly valued trade secret information of Plaintiff ("Plaintiff's Printing Technology").

15.  During the course of its existence Plaintiff's principal and its President, Kwan Lee ("Lee"), designed numerous two dimensional silk screen and sublimation print designs which were applied to clothing using Plaintiff's Printing Technology. Over the years, Lee caused those designs to be registered as copyrights, including the following designs which were registered as

*First Amended Complaint.wpd*

compilations:

(1)     "Trendy Design 175" VAu 1-032-413, registered with the Copyright Office effective June 11, 2010;

(2)     "Trendy Design 174" Vau 1-032-407, registered with the Copyright Office effective June 11, 2010;

(3)     "Trendy Design 130" VAu 1-032-348, registered with the Copyright Office effective June 15, 2010;

(4)     "Trendy Design 078" VAu 1-003-619, registered with the Copyright Office effective October 1, 2008;

(5)     "Trendy Design 190," "Trendy Design 191," "Trendy 193" and "Trendy Design 197," VAu 1-032-726, registered with the Copyright Office effective June 29, 2010;

(6)     "Trendy Design 098" VAu 998-234, registered with the Copyright Office effective April 13, 2009;

(7)     "Trendy Design 099" VAu 998-537, registered with the Copyright Office effective April 13, 2009;

(8)     "Trendy Design 138" VAu 1-032-298, registered with the Copyright Office effective June 9, 2010;

(9)     "Trendy Design 108" VAu 1-022-349, registered with the Copyright Office effective May 29, 2009;

(10)    "Trendy Design 111" VAu 1-022-341, registered with the Copyright Office effective May 29, 2009;

(11)    "Trendy Design 112" VAu 1-018-247, registered with the Copyright Office effective July 30, 2009;

(12)    "Trendy Design 143" VAu 1-032-291, registered with the Copyright Office effective June 9, 2010;

(13)    "Trendy Design 176" VAu 1-032-477, registered with the Copyright Office effective June 11, 2010;

(14)  "Trendy Design 142" VAu 1-032-295, registered with the Copyright Office effective June 9, 2010;

(15)  "Trendy Design 179" VAu 1-032-485, registered with the Copyright Office effective June 11, 2010;

(16)  "Trendy Design 177" VAu 1-032-478, registered with the Copyright Office effective June 11, 2010;

(17)  "Trendy Design 148" VAu 1-032-362, registered with the Copyright Office effective June 11, 2010;

(18)  "Trendy Design 156" VAu 1-032-458, registered with the Copyright Office effective June 11, 2010;

(19)  "Trendy Design 145" VAu 1-032-404, registered with the Copyright Office effective June 9, 2010;

(20)  "Trendy Design 136" VAu 1-032-303 , registered with the Copyright Office effective June 15, 2010;

(21)  "Trendy Design 154" VAu 1-032-340, registered with the Copyright Office effective June 11, 2010;

(22)  "Trendy Design 149" VAu 1-032-356, registered with the Copyright Office effective June 11, 2010;

(23)  "Trendy Design 180" VAu 1-032-366, registered with the Copyright Office effective June 11, 2010;

(24)  "Trendy Design 146" VAu 1-032-492, registered with the Copyright Office effective June 11, 2010;

(25)  "Trendy Design 161" VAu 1-032-473, registered with the Copyright Office effective June 11, 2010; and

(26)  "Trendy Design 160" VAu 1-032-475, registered with the Copyright Office effective June 11, 2010 ("the Copyrighted Designs").

16.    The Copyrighted Designs were subsequently legally assigned to Plaintiff by Lee ("Plaintiff's Copyrighted Designs").

6

17.     In mid 2007, Lee, in his capacity as the President of Plaintiff, was approached by the Chairman of Defendant SAE-A Korea, Woong Ki Kim ("Kim"), who asked Lee whether Plaintiff was interested in entering into a joint venture agreement with Defendant SAE-A Korea, and its subsidiaries, Defendant SAE-A America and Glovia. The intended purpose of the proposed joint venture was to establish a printing factory in Latin America that would utilize Plaintiff's Printing Technology to manufacture on behalf of Defendants, at pre-determined prices, printed clothing apparel for sale to Defendants' retailers and wholesalers in the United States. Kim told Lee that Defendants wanted to enter into a joint venture with Plaintiff because SAE-A-Korea did not possess, and did not have access to, the water base printing, discharge printing, and sublimation processes which had been developed by, and were unique to, Plaintiff. Defendants were also interested in Plaintiff's proven ability to read and forecast trends in American market. Kim, of Defendant SAE-A Korea, was joined by other officers and representatives of said defendant, as well as officers and representatives of Defendants SAE-A America, and Does 1 through 25, inclusive, in making the foregoing and subsequent representations which were intended to induce Plaintiff to enter into that joint venture agreement which involved the disclosure of Plaintiff's Printing Technology to Defendants and the access to Plaintiff's design capabilities.

18.     In that Defendants SAE-A Korea, SAE-A America, Glovia and Does 26 though 50, inclusive, did not have the know-how or ability to build manufacturing facility which could utilize water base printing, discharge printing and sublimation, they represented to Plaintiff that they would be prepared to finance all costs of establishing such a factory in Latin America if Plaintiff would agree to utilize its expertise, train personnel, supervise the actual build-out, and operate such a printing operation using Plaintiff's Printing Technology, as Plaintiff had done in its own Los Angeles factory. Those Defendants further represented that, when the factory was fully constructed, if Plaintiff would pay the initial operational costs of the factory, Defendants would provide Plaintiff with sufficient orders from their international retail and wholesale customers, through co-Defendants Ocen and SAE-A America, to the extent that the factory would not only generate income to cover its operational costs, but would also have sufficient

7

1    funds to pay off Defendants' initial investment, which would allow Plaintiff to become the
2    owner of the factory within five years.

3         19.    In addition to funding the initial operational costs, Plaintiff was to train
4    Defendants' own sales team and the new factory's personnel about water base printing,
5    discharge printing and sublimation printing. Plaintiff was also to license to Defendant SAE-A
6    Korea, Plaintiff's Printing Technology to be used in the joint manufacturing venture between the
7    parties.

8         20.    In reliance on the foregoing representations Plaintiff agreed, on July 23, 2008, to
9    enter into the joint venture agreement with Defendant SAE-A Korea and to license Plaintiff's
10   Printing Technology to said defendant and its local Guatemalan corporation, defendant Glovia.
11   As part of that agreement, for the duration of the parties' joint venture, Plaintiff also allowed
12   Defendants to use Plaintiff's Copyrighted Designs, provided that the application of those designs
13   to clothing apparel was done by the newly established factory while the parties were jointly
14   operating that new manufacturing plant. Defendant SAE-A Korea then, directly or indirectly,
15   purchased a factory building in Mixico, Guatemala which was thereafter called "Glovia" ("the
16   Glovia Factory"), and was to be run by Defendant Glovia. Plaintiff, with funds provided by
17   Defendant SAE-A Korea, purchased all of the manufacturing equipment, designed the floor plan,
18   trained personnel, and supervised the construction of the Glovia Factory from the ground up.
19   In addition, Plaintiff hired and trained personnel in Los Angeles, teaching them the unique water
20   based printing manufacturing techniques at Plaintiff's Los Angeles plant, and then sent those
21   employees from Los Angeles to the Glovia Factory in Guatemala in order to mange and oversee
22   that manufacturing process, which Plaintiff supervised. Plaintiff also educated and trained
23   Defendants' sales team about Plaintiff's Printing Technology so that they could promote the
24   business of the joint venture.

25        21.    In or about December of 2008 Plaintiff had completed the Glovia Factory build
26   out and commenced production. Relying on the representations made by Defendants, and each
27   of them, Plaintiff funded the initial operational expenses and began manufacturing clothing
28   containing Plaintiff's Copyrighted Designs, as well as other designs provided by Defendants,

8

through the use of Plaintiff's Printing Technology. Plaintiff is informed and beleives, and thereon alleges, that Defendants SAE-A America and Ocen coordinated the production of, and sold the clothing containing Plaintiff's Copyrighted Designs, to major retailers such as Express, Old Navy, Tween Brand and Pac Sun (the "Retailers").

22.     Contrary to Defendants' representations and promises, Defendants intentionally did not place sufficient orders with the Glovia Factory. Plaintiff is informed and believes, and thereon alleges, that from December 2008 through May 2010, Defendants placed orders, which should have gone to the Glovia Factory, with other factories and manufacturers in, and outside of, Latin America. Plaintiff is informed and believes, and thereon alleges, that this was done in a deliberate attempt to cause Plaintiff to lose money, since pursuant to the joint venture agreement Plaintiff was obligated to pay all initial operational costs. Plaintiff is also informed and beleives, and thereon alleges, that Defendants were thereby hoping to force Plaintiff out of the joint venture business so that they could misappropriate Plaintiff's Printing Technology, the details of which Plaintiff had shared with them in furtherance of the joint venture, and to convert the entire operation of the Glovia Factory. Ultimately, not being able to force Plaintiff to abandon the business fast enough for their liking by refusing to give the Glovia Factory sufficient work orders, Defendants, in May of 2010, forcibly took over control of the Glovia Factory, locked Plaintiff out of the factory, and assumed control of all the bank accounts associated with the Glovia Factory. Thereafter, Defendants, and each of them, continued to operate the Glovia Factory using Plaintiff's Printing Technology. Plaintiff is also informed and believes, and thereon alleges, that Defendants continued to manufacture and sell clothing which depicted and used Plaintiff's Copyrighted Designs, despite Plaintiff's withdrawal of Defendants' limited license to use Plaintiffs' Printing Technology and its Copyrighted Designs which had been conferred upon Defendants only while the parties' joint venture was still in existence.

23.     Plaintiff is informed and believes, and thereon alleges, that subsequent to their ouster of Plaintiff from the business of the joint venture in May 2010 and locking Plaintiff out of the Glovia Factory, Defendants continued, without the permission or any license by Plaintiff, to manufacture, import, export, distribute, and offer for sale and/or sell clothing which had been

First Amended Complaint.wpd

manufactured using Plaintiff's Printing Technology and depicting Plaintiff's Copyrighted Designs to retail and wholesale customers, including but not limited to the Retailers ("the Accused Products").

## FIRST CLAIM FOR RELIEF

(For Copyright Infringement Pursuant to 17 U.S.C. §§101, et seq.-Against All Deferndants)

24.    Plaintiff realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 23, inclusive, as though set forth in full herein.

25.    Plaintiff's assignor has complied in all respects with the Copyright Laws of the United States, 17 U.S.C. § 101, et seq. and has secured the exclusive rights and privileges in and to the Copyrighted Designs which had thereafter been legally assigned to Plaintiff.

26.    Plaintiff is informed and believes, and on that basis alleges, that Defendants, and each of them, intentionally and willfully sold clothing apparel depicting designs which are identical, virtually identical or substantially similar to Plaintiff's Copyrighted Designs, thereby infringing these copyrights, and each of them by selling the Accused Products.

27.    Plaintiff is informed and believes, and thereon alleges, that Defendants, and each of them, had express and/or constructive knowledge that any act of reproducing, manufacturing, preparing derivative works of, importing, distributing and/or selling the Accused Products after May 2010 constituted an intentional infringement upon Plaintiff's Copyrighted Designs. Yet despite such knowledge, Defendants have continued to willfully infringe Plaintiff's Copyrighted Designs by marketing, distributing and selling the Accused Products.

28.    By virtue of Defendants' willful infringement, Plaintiff is entitled to statutory damages, or to recover its actual damages caused by the infringement, including Defendants' profits, whichever is higher.  Plaintiff will elect whether or not to seek statutory damages prior to final judgment in this action.  Plaintiff may also recover its reasonable attorneys' fees by virtue of Defendants' infringement.

29.    Plaintiff is informed and believes, and on that basis alleges, that unless enjoined by this Court, Defendants intend to continue their course of conduct and to wrongfully use, infringe upon, sell and otherwise profit from Plaintiff's Copyrighted Designs and works derived

1   from them.  As a direct and proximate result of the acts of Defendants, as alleged herein above,
2   Plaintiff has already suffered irreparable harm.  Plaintiff has no adequate remedy at law to
3   redress all of the injuries that Defendants have caused and intend to cause by their continued
4   misconduct.  Plaintiff will continue to suffer irreparable harm and sustain losses until
5   Defendants' actions, as alleged herein above, are enjoined by this Court.

6                                **SECOND CLAIM FOR RELIEF**

7                  ( Reverse Palming Off, 15 U.S.C. §1125(a)-Against All Defendants)

8        30.    Plaintiff incorporates by this reference and realleges the allegations set forth in
9   Paragraphs 1 through 23, inclusive, as though fully set forth herein.

10       31.    Plaintiff is informed and believes, and based thereon alleges, that Defendants'
11  unauthorized use in interstate commerce, after May 2010, of competing clothing apparel which
12  depict designs which are virtually identical to Plaintiff's originally designed prints, including the
13  Copyrighted Designs; which copy the elements of Plaintiff's Copyrighted Designs; which palm
14  off Plaintiff's design elements and Plaintiff's Printing Technology; and which  are as a result
15  knock-offs of the two dimensional artwork created by Plaintiff or Lee, and assigned to Plaintiff,
16  constitute acts of reverse palming off and result in a false description and/or false designations
17  of origin, which are likely to cause confusion and mistake and deceive consumers as to the
18  source or origin of the Accused Products, or as to the sponsorship or approval of such goods by
19  Plaintiff.

20       32.    Defendants' intentional sale and marketing of their knocked-off Accused Products
21  in competition with Plaintiff constitute acts of unfair competition in violation of §§43(a) and (c)
22  of the Lanham Act, 15 U.S.C. §1125(a).

23       33.    As a proximate result of Defendants' acts of unfair competition Plaintiff has
24  suffered, and is continuing to suffer, irreparable injury, and has incurred, and is continuing to
25  incur, monetary damages in an amount subject to proof at trial.

26       34.    Plaintiff is informed and believes, and thereon alleges, that as a proximate result
27  of Defendants' acts of unfair competition, Defendants have made substantial sales and unjustly
28  gained profits in amounts subject to proof at trial.

35.    The unfair competitive activities of Defendants, and each of them, alleged herein are likely to continue unabated unless and until Defendants are enjoined and restrained by this Court.

36.    Plaintiff is informed and believes, and thereon alleges, that Defendants' acts of unfair competition were committed, and continue to be committed, with actual notice of Plaintiff's exclusive rights and with an intent to cause confusion, to cause mistake and/or to deceive consumers, and to cause injury to the reputation and goodwill associated with Plaintiff, with Plaintiff's Copyrighted Designs and with Plaintiff's Printing Technology. Pursuant to 15 U.S.C. §1117, Plaintiff is therefore entitled to recover three times its actual damages or three times Defendants' profits, whichever is greater, together with Plaintiff's attorneys' fees. In addition, pursuant to 15 U.S.C. §1118, Plaintiff is entitled to an order requiring the destruction of all infringing products and promotional materials in Defendants' possession, including the Accused Products.

## THIRD CLAIM FOR RELIEF

(Unfair Competition, Unfair Business Practices, and False Advertising in Violation of *California Business & Professions Code* §§17200, and 17500, et seq.-Against All Defendants)

37.    Plaintiffs incorporate by this reference and realleges the averments set forth in Paragraphs 1 through 23, inclusive, and 30 through 32, inclusive, as though fully set forth herein.

38.    Supplemental jurisdiction for this Court further arises under California Business and Professions Code, §17200 et seq.

39.    Defendants' activities and conduct as alleged herein-above also constitute acts of unfair competition, unlawful and fraudulent business practices, and deceptive and misleading advertising, all of which are expressly prohibited under §§ 17200 et seq. and 17500 et seq. of the California Business & Professions Code.

40.    As a result of Defendants' intentional acts of unfair competition, their fraudulent and unfair business practices, and their false and misleading advertising, Plaintiff has suffered,

1   and continues to suffer, irreparable injury, while Defendants have gained property and revenues

2   properly belonging to the Plaintiff.  Plaintiff is therefore entitled to, and seeks, restitution of

3   these amounts as well as injunctive relief restraining Defendants, their officers, agents, and

4   employees, and all persons acting in concert with them, from further engaging in acts of unfair

5   competition and/or fraudulent business practices against Plaintiff, and in false and deceptive

6   advertising to the ultimate consumers.

7                                   **FOURTH CLAIM FOR RELIEF**

8                        (Common Law Unfair Competition-Against All Defendants)

9           41.     Plaintiff incorporates by this reference and realleges the averments set forth in

10  Paragraphs 1 through 23, inclusive, and 30 through 32, inclusive, as though fully set forth herein.

11          42.     Defendants' acts of palming off and copying of Plaintiff's original designs in the

12  marketing and sale of competing products, including the Accused Products, after May 2010, has

13  permitted Defendants to pass off their Accused Products as being sold, sponsored, authorized,

14  or otherwise affiliated with Plaintiff, whereas in fact, since May 2010, Plaintiff and Defendants

15  are business competitors in the same industry and are no longer affiliates.

16          43.     Defendants have also engaged in deceptive and misleading advertising by falsely

17  implying to retailers and consumers, even after May 2010, that the designs in questions are

18  original or belong to Defendants, when in fact these designs had been copied by Defendants who

19  had misappropriated Plaintiffs' Printing Technology and converted Plaintiff's original print

20  designs.

21          44.     By reason of the virtual identity and/or substantial  similarity between Plaintiff's

22  original print designs and Defendants' knocked-off designs as depicted in the Accused Products,

23  the public is likely to identify Defendants' Accused Products as those originating with and/or

24  manufactured by Plaintiff, or to mistakenly conclude that Plaintiff continues to be connected

25  with or still has an ongoing affiliation with the production and sale of Defendants' Accused

26  Products.

27          45.     Defendants' acts as alleged herein constitute acts of unfair and unlawful

28  competition under California common law.

                                                    13                      First Amended Complaint.wpd

46.     As a direct and proximate result of Defendants' wrongful acts as alleged herein, Plaintiff has suffered and will continue to suffer damages, including lost profits, in an amount subject to proof at trial.

47.     Plaintiff is informed and believes, and thereon alleges, that Defendants' wrongful acts as alleged herein have resulted in Defendants' unjust enrichment and in the gaining of revenues and profits to which these Defendants are not entitled.

48.     Defendants' wrongful acts have caused and will continue to cause irreparable harm to Plaintiff unless restrained by this Court.   Plaintiff has no adequate remedy at law. Accordingly, Plaintiff is entitled to an order enjoining and restraining Defendants, and each of them, during the pendency of this action and permanently thereafter, from manufacturing, importing, marketing, distributing and offering for sale or selling their infringing and deceptive products in unlawful competition with the Plaintiff.

49.     Defendants'   wrongful acts, as alleged herein, were made and performed fraudulently and intentionally and with the intent to cause Plaintiff injury. Said wrongful acts constitute despicable conduct carried on with a willful and conscious disregard of Plaintiff' rights, thereby subjecting Plaintiff to unjust hardship in conscious disregard of its rights.  Said wrongful acts were made with the intent to deprive Plaintiff of its money and rights and to cause Plaintiff injury, all of which entitle Plaintiff to punitive or exemplary damages against Defendants, and each of them, in a sum according to proof at trial.

## FIFTH CLAIM FOR RELIEF

(Fraud & Deceit-Against Defendants SAE-A Korea,  SAE-A America, Glovia and Does 1 through 50, inclusive )

50.     Plaintiff incorporates by this reference and realleges the allegations set forth in Paragraphs 1 through 23, inclusive, as though fully set forth herein.

51.     Prior to July 23, 2008, in an effort to induce Plaintiff to set up the infrastructure for the Golvia Factory in Guatemala,  and to cause Plaintiff to purchase the manufacturing equipment for the factory, to design its floor plan, to train personnel in Plaintiff's Printing Technology and to supervised the construction of the Glovia Factory  from the ground up,

Defendant SAE-A Korea, through its Chairperson, Kim and Does 1 through 25, inclusive, made certain representations to Plaintiff's President, Lee.  Those representations, which were also confirmed by officers of SAE-A America, and Glovia, included statements to the effect that if Plaintiff would enter into a joint venture with Defendant SAE-A Korea, and act as alleged herein above, that Plaintiff, could, within five years of operating the Glovia Factory, become its owner, provided that Defendant SAE-A Korea was able to recoup its investment in the venture.  Defendants, and each of them also promised to provide the Glovia Factory with sufficient work orders so as to enable it to generate the income necessary to compensate Defendant SAE-A Korea and its local subsidiary Glovia, for its initial investment, and provide for income to the Plaintiff so it may recoup its initial funding of operational costs.

52.     Plaintiff is informed and believes, and thereon alleges, that while Kim and Does 1 through 25, inclusive, were making those representations, at the direction of SAE-A Korea, and on behalf of Defendants, SAE-A Korea, SAE-A America, Glovia, and Does 26 through 50, inclusive, Defendants, and each of them, knew that those representations were false in that Defendants SAE-A Korea and SAE-America, Glovia, and Does 26 through 50, inclusive, who had ratified those statements, never intended to allow Plaintiff to acquire the ownership of the Glovia Factory.  Defendants also knew that without work orders being provided by SAE-A Korea and its agents, the remaining Defendants, Plaintiff would not be able to generate the income necessary to repay Defendant SAE-A Korea's initial investment and to recoup the initial operational costs of the Glovia Factory which Plaintiff had invested.

53.     Plaintiff is informed and believes, and thereon alleges, that Defendants, and each of them, intentionally concealed their true intent from Plaintiff in an effort to induce Plaintiff to set up the Glovia Factory, to teach Plaintiff's Printing Technology to Defendants and to their local agent in Guatemala, Defendant Glovia, and to allow Defendants and each of them to utilize Plaintiff's Copyrighted Designs in the manufacture of apparel being sold by Defendants to their customers around the world, including but not limited to the Retailers.  Defendants knew, or should have known, that Plaintiff would not have agreed to disclose to Defendants and share with them Plaintiff's confidential and unique water base, discharge and sublimation printing

technology, nor spend substantial resources to set up the infrastructure for the Glovia Factory, nor give Defendants access and use of Plaintiff's Copyrighted Designs, had Plaintiff known that it would be ousted from the Glovria Factory within 18 months, and that it would never be allowed to gain ownership of the Glovia Factory.

54.     Plaintiff, and its President Lee, believed said representations by Defendants, and each of them, to be true based on the fact that those representations were personally made by Kim, a top level manager of SAE-A Korea, one of the largest clothing manufacturing concern in the world. Plaintiff, and its President Lee, also trusted Defendants since they shared the same Korean culture and national origin.   Therefore, in justifiable reliance on Defendants' representations, predicated on Defendants' business reputation and Plaintiff's trust, Plaintiff entered into the joint venture agreement with Defendants SAE-A Korea, SAE-A America and Glovia, and undertook the acts alleged hereinabove in furtherance of that venture.

55.     As part of their scheme to defraud Plaintiff, once the Glovia Factory became operational in December 2008, Defendants, and each of them, began providing only nominal work orders to the Glovia Factory, and thereafter continued to give their work orders to other factories in Guatemala, all in an effort to sabotage Plaintiff's efforts to operate the Glovia Factory as a profitable enterprise and to prevent Plaintiff from generating sufficient income to repay Defendants their initial investment. Plaintiff is informed and believes, and thereon alleges, that in the interim Defendants, through their local agents in Guatemala, continued to learn Plaintiff's Printing Technology and to utilize Plaintiff's Copyrighted Designs in the manufacture and distribution of the Accused Products.

56.     As a proximate result of the fraudulent and wrongful conduct of Defendants, and each of them, as herein alleged, Plaintiff has sustained damages in an amount subject to proof with exactitude at the time of trial.

57.     Defendants' misrepresentations and wrongful conduct, as alleged herein, were made and performed fraudulently and intentionally and with the intent to cause Plaintiff injury. Said misrepresentations constitute despicable conduct carried on with a willful and conscious disregard of Plaintiff' rights, thereby subjecting Plaintiff to unjust hardship in conscious

First Amended Complaint.wpd

1    disregard of its rights. Said misrepresentations were made with the intent to deprive Plaintiff

2    of its money and rights and to cause Plaintiff injury, all of which entitle Plaintiff to punitive or

3    exemplary damages against Defendants and each of them, in a sum according to proof at trial.

4                                    **SIXTH CLAIM FOR RELIEF**

5    ( For Misappropriation of Trade Secrets-Against SAE-A Korea, SAE-A America, Glovia and

6                              Does 26 through 50, Inclusive )

7         58.    Plaintiff incorporates by this reference and realleges the allegations set forth in

8    Paragraphs 1 through 23, inclusive, and Paragraphs 50 through 55, inclusive, as though fully set

9    forth herein.

10        59.    Plaintiff is the owner of certain proprietary and confidential trade secret

11   information relating to Plaintiff's Printing Technology, including but not limited to the design

12   drawings for each silk print or sublimation print, the raw material elements, such as the types of

13   chemical components to be used, the selection of manufacturing equipment necessary for the

14   printing production using such water base, discharge and sublimation printing technologies, the

15   identity of vendors and suppliers for quality raw materials and hardware components, the pricing

16   formulas for the wholesale distribution, and the marketing analysis and forecasting of trends in

17   the market and of successful designs within the collections created by Plaintiff, which is

18   generally based on prior marketing and promotional efforts by the Plaintiff ("Trade Secret

19   Information").

20        60.    Plaintiff takes reasonable steps to maintain its Trade Secret Information as

21   confidential and generally does not disclose said information to its vendors, suppliers, customers.

22   or other business affiliates, in the absence of a confidential joint venture relationship as was

23   created between Plaintiffs and Defendants SAEA- Korea, SAE-A America, Glovia, and Does

24   26 through 50, inclusive, under the facts at bar.

25        61.    Plaintiff's Trade Secret Information has independent economic value, and the

26   unauthorized use by, or disclosure to, third parties of Plaintiff's Trade Secret Information would

27   benefit said third parties and/or harm Plaintiff.

28

                                              17

62.     As Plaintiff's joint venture partners in the Glovia Factory, Defendants SAEA-Korea, SAE-A America, Glovia and Does 26 through 50, inclusive, were granted access to Plaintiff's Trade Secret Information under circumstances in which Defendants knew, or should have known, the confidential nature of said information and knew, or should have known, that Plaintiff would be harmed if said information was used to unfairly compete with Plaintiff by Defendants or third parties.

63.     Plaintiff is informed and believes, and thereon alleges, that since approximately May 2010, Defendants, and each of them, have used, and continue to use, Plaintiff's Trade Secret Information for their own benefit and to the detriment of Plaintiff.

64.     Plaintiff is informed and believes, and thereon alleges, that Defendants' misappropriation of Plaintiff's Trade Secret Information has been intentional, deliberate, willful, and fraudulent.

65.     As a proximate result of Defendants' misappropriation of Plaintiff's Trade Secret Information, Plaintiff has suffered, and is continuing to suffer, irreparable injury, and has incurred, and is continuing to incur, monetary damages in an amount subject to proof at trial, including but not limited to attorneys fees.

66.     Defendants' misappropriation of Plaintiff's Trade Secret Information complained of herein is likely to continue unabated unless and until Defendants are enjoined and restrained by this Court.  Plaintiffs is therefore entitled to preliminary and permanent injunctive relief against Defendants, and each of them, in addition to compensatory, punitive and exemplary damages, costs and reasonable attorney's fees.

WHEREFORE, Plaintiff requests judgment against Defendants, and each of them, jointly and severally, and prays for a judgment and an order that:

1.     That Defendants, and each of them, be held to have intentionally infringed Plaintiff's Copyrighted Designs;

2.     That the Court finds a substantial likelihood that Defendants, and each of them, will continue to infringe upon the Plaintiff's Copyrighted Designs unless enjoined from doing

18

so;

3.     That Defendants, their officers, directors, agents, servants, employees, partners, and joint venturers, and all persons acting in concert and participation with them, shall be enjoined by preliminary and permanent injunction and restrained from, in any manner, directly or indirectly:

a.     Reproducing, importing, shipping, delivering, distributing, offering to sell, selling, marketing, displaying, or advertising, any products, including but not limited to the Accused Products, that copy or infringe Plaintiff's Copyrighted Designs, or so closely resemble Plaintiff's designs as to create a likelihood of confusion, mistake or deception, or which infringe, copy or are substantially similar and confusingly similar to the styles in Plaintiff's Copyrighted Designs;

b.     Representing or implying, directly or indirectly, to retailers, customers, distributers, licensees, or any customers or potential customers of Defendants' products that such products originated with, are sponsored, endorsed, licensed by, or are otherwise associated or affiliated with Plaintiff;

4.     That Defendants account and pay over to Plaintiff all profits which Defendants, and each of them, have derived from any sale of the Accused Products, and all damages which Plaintiff has sustained by reason of Defendants' manufacture, importation, use and/or sale of the Accused Products;

5.     That all damages awarded hereunder to the Plaintiff shall be trebled in accordance with the provisions of 15 U.S.C. §1117;

6.     That any products, labels, prints, signs, packages, wrappers, receptacles, and advertisements bearing the infringed Copyrighted Designs and/or palmed off designs shall be delivered up by Defendants for impoundment and ultimate destruction as the Court directs, pursuant to 15 U.S.C. §1116;

7.     That Defendants shall file a report with the Court under oath in accordance with 15 U.S.C. §1116 setting forth the manner and form of their compliance with this Court's injunction;

19

8.      That Defendants shall be required to recall all infringing products which they have heretofore sold, and to offer a full and complete refund to all purchasers of such products;

9.      That this case shall be deemed an exceptional case under 15 U.S.C. §1117 and Defendants shall pay Plaintiff its reasonable attorney's fees incurred in the action;

10.     That Plaintiff shall be awarded compensatory and exemplary and punitive damages against all Defendants under its state common law unfair competition and against Defendants SAE-A Korea, SAE-A America, Glovia and Does 1 through 50, inclusive based on Plaintiff's claims for fraud, and misappropriation of trade secret information;

11.     That Plaintiff shall be entitled to restitution of all property and revenues obtained by Defendants through their acts of unfair competition, unlawful business practices and false advertising;

12.     That Plaintiff shall be awarded their costs of suit incurred herein; and

13.     That  Plaintiff shall be awarded such other and further relief as this Court may deem just and proper.

DATED:  January 28, 2011.                    **HELLER & EDWARDS**


By:_____
        Lawrence E. Heller, Attorneys for Plaintiff
        UNIVERSAL SURFACE TECHNOLOGY, INC.,
        d.b.a. "Trendy Embellishment"

20

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38, *Fed. R. Civ. Procedure*, Plaintiff, UNIVERSAL SURFACE TECHNOLOGY, INC., d.b.a. "Trendy Embellishment," hereby demands a trial by jury in this action.

DATED:  January 28, 2011.                    *HELLER & EDWARDS*

By: _____
    Lawrence E. Heller, Attorneys for Plaintiff
    UNIVERSAL SURFACE TECHNOLOGY, INC.,
    d.b.a. "Trendy Embellishment"

21

First Amended Complaint.wpd